## Neidlinger Unemployment Compensation Case.

Argued October 1, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Robert J. Gillespie,* with him *Martin D. Cohn* and *James P. Costello, Jr.,* for claimants, appellants.

*William L. Hammond,* Special Deputy Attorney General, with him *Robert E. Woodside,* Attorney General, for appellee.

*S. W. Rhoads* and *Jonathan C. Valentine,* for employer, intervenor, appellee.

OPINION BY GUNTHER, J., November 15, 1951:

Appellants' claims for compensation were denied by the Board under the Unemployment Compensation Law, §402(d) 43 PS Sec. 802, which provides: "An employe shall be ineligible for compensation for any week . . . (d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute . . . at the factory, establishment or other premises at which he is or was last employed . . . ."

Appellants concede that they were unemployed due to a stoppage of work which existed because of a labor dispute, but contend that they are eligible for benefits because they were not employed "at the factory, establishment or other premises" where the labor dispute took place.

The Board found as facts that prior to September, 1933, the Lehigh Valley Coal Company, employer, maintained two collieries, namely, Hazleton Shaft Colliery and Hazleton No. 1 Colliery. In 1933, the employer dismantled the breaker at Hazleton No. 1 Colliery and thereafter Slope Section No. 8 (formerly Hazleton No. 1 Colliery) and the Hazleton Shaft Colliery were operated as one integrated establishment. The two collieries are physically connected by an underground passage about a mile and one-half in length and coal mined at No. 8 Slope Section is transported underground to the breaker at Hazleton Shaft Colliery for processing. The employer operated the two locations as one since 1933, having one breaker, one operating superintendent, one payroll and one set of accounting

records. It appears, however, that the miners working at the Hazleton Shaft Colliery are members of Local No. 1376 of the United Mine Workers; that miners employed at the No. 8 Slope Section were also members of the United Mine Workers, but were members of Local No. 1831. On Friday, September 22, 1950, the mine superintendent notified the workers at the Hazleton Shaft Colliery that the second shift (afternoon) would not work because of a shortage of cars. Local No. 1376 thereupon called a strike and the work stoppage began at that time. The employees who were working on No. 8 Slope Section were informed when they reported to work on September 25, 1950, that there was no work because of the strike of the employees at the Hazleton Shaft Colliery. Work was resumed on October 1, 1950.

The pivotal question is whether there is substantial, competent evidence to support the Board's findings that "2. . . . Slope #8 and the Hazleton Shaft Colliery were operated as one establishment. . . ." and that "6. All of the employes at the establishment, i.e., members of Local #1376 and Local #1831, were production workers engaged in various capacities in the production of coal." If the Board's findings are supported by substantial, competent evidence, they are conclusive: §510 of the Unemployment Compensation Law; *Tronieri Unemployment Compensation Case,* 164 Pa. Superior Ct. 435, 437, 65 A. 2d 426.

The evidence establishes that the employer since 1933 considered the establishment as a single operating unit; that they had one mine superintendent in authority; that they had one breaker; that they had one payroll; that they had one set of accounting records, and that coal from the No. 8 Slope Section was transported by a physically connected underground passageway for processing in Hazleton Shaft Colliery. This evidence was amply sufficient to support the Board's con-

clusion that the present appellants were employed at the "factory, establishment or other premises" of the employer. Appellants' only evidence to the contrary is that the employees of the two collieries, although members of the United Mine Workers, belonged to different locals. That factor was merely one of many factors which the Board was called upon to consider in an overall appraisal of the evidence, yet that factor alone is insufficient. The evidence recited above warranted a finding that production of the two locations was so highly synchronized and functionally integrated as to constitute one "factory" or "establishment" within the meaning of the Unemployment Compensation Law. Cf. *Chrysler Corporation v. Smith,* 297 Mich. 438, 298 N.W. 87, 135 ALR 900, 920.

The Board found, and appellants do not challenge the finding "that the employes in Local #1376 and the employes in Local #1831 were all production workers engaged in various capacities in the production of coal. In other words, the claimants were of the same grade or class of workers as the employes (Local #1376) who instigated the strike." *Curcio Unemployment Compensation Case,* 165 Pa. Superior Ct. 385, 68 A. 2d 393.

Decision affirmed.