Curcio Unemployment Compensation Case.

Westinghouse Electric Corporation, Appellant, *v.*
Unemployment Compensation Board of Review.

Argued April 12, 1949. Before RHODES, P. J., HIRT, RENO, DITHRICH, ARNOLD and FINE, JJ. (ROSS, J., absent.)

*John G. Wayman,* with him *David McNeil Olds* and *Reed, Smith, Shaw & McClay,* for employer, appellant.

*William L. Hammond,* Special Deputy Attorney General, with him *Richard H. Wagner,* Associate Counsel, and *T. McKeen Chidsey,* Attorney General, for Unemployment Compensation Board, appellee.

*Sidney G. Handler,* with him *Douglass & Handler,* for claimant and Pennsylvania Federation of Labor, intervenors, appellees.

OPINION BY HIRT, J., September 27, 1949:

Two rival labor unions were competing for recognition as the exclusive representative of the 600 employes of the appellant, Westinghouse Electric Corporation, in its plant in Beaver, Pennsylvania. There was no existing bargaining unit in the plant. These unions—Local No. 634 United Electrical, Radio and Machine Workers,

C. I. O., and Local No. 201, International Brotherhood of Electrical Workers, A. F. L.—each had a membership of between 250 and 300 of the workmen in the plant. The C. I. O. local did not have standing to petition the National Labor Relations Board to conduct an election but nevertheless in a series of demands, beginning in October 1947 and ending on March 8, 1948, sought recognition as sole bargaining agent for all workmen in the plant without certification by that Board. In January 1948 the A. F. L. local also had petitioned the company for recognition as the plant bargaining unit without certification. To these demands the company notified both unions, thus: "We stand ready to recognize and to meet with any union that is certified by the N. L. R. B. as the exclusive representative of the employees". In assuming this stand, and refusing recognition otherwise, the company acted within its rights. To compel the company to accede to the demands of its local union for recognition, the District Council of C. I. O. forced a work stoppage at the plant at 10:30 a.m. on March 8, 1948, when all of the members of the C. I. O. local union went out on strike. All other production workers were excluded from the plant thereafter by a picket line of the striking union. The plant was still strike-bound on June 16, 1948, the date of the hearing before the Unemployment Compensation Board of Review. In the meantime on petition of the A. F. L. local an election had been held on May 11, 1948, under the supervision of the National Labor Relations Board to determine whether that union was entitled to certification as bargaining agent. Strangely enough, the election resulted in a tie and decided nothing; 266 votes for affiliation with Local 201 of the A. F. L. International Brotherhood of Electrical Workers, as against 266 votes for "no union", were recorded.

The disposition of this appeal, from the order of the Board awarding unemployment compensation to Frank

Curcio, will govern claims of about 165 other members of the A. F. L. local union. The facts applicable to all of them are substantially alike and are undisputed. The Referee affirmed the Bureau's refusal of compensation and disallowed the claim in question. The Unemployment Compensation Board of Review on appeal however reversed the decision of the Referee and allowed the claim.

We are of the opinion that claimant is barred under the admitted facts by the present amendment of §402(d) of the Unemployment Compensation Law, the Act of June 30, 1947, P. L. 1186, 43 PS §802. By that amendment it is provided: "An employe shall be ineligible for compensation for any week . . . (d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute at the factory, establishment or other premises at which he is or was last employed: Provided, That this subsection shall not apply if it is shown that (1) he is not participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (2) he is not a member of an organization which is participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (3) he does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in, or directly interested in, the dispute."

Claimant did not voluntarily leave his work without good cause. He and about 150 other production workers remained at work the entire first day of the strike. But the following morning when they reported for work they were opposed by approximately 200 pickets who in massed groups denied their right of access to the plant. The picket line at the outset of the strike obviously was not maintained within the limits permitted by law: Cf. *Westinghouse Elec. v. United Elec.*, 353 Pa. 446, 46 A. 2d

16. From and after March 9, 1948, the striking union maintained a picket line around the plant on a 24 hour basis, excluding all but office workers and construction personel. Though at times only a skeleton line was maintained yet it was made apparent that a line of 100 or more pickets would be resumed if any production employes attempted to resume work. The findings of the Board, though somewhat equivocal, support this conclusion: Although there was no violence, there were threats of it and the restraining action of the pickets was of such coercive nature as to supply claimant with good cause for not making further attempts to enter the plant. *Sturdevant Unemployment Comp. Case*, 158 Pa. Superior Ct. 548, 556, 557, 45 A. 2d 898. Cf. *Phillips Unemploy. Compensation Case*, 163 Pa. Superior Ct. 374, 62 A. 2d 84.

The Unemployment Compensation Board of Review, with some reluctance however, concluded that this case was controlled by *Loerlein Unemploy. Compensation Case*, 162 Pa. Superior Ct. 216, 56 A. 2d 269, affirmed in 359 Pa. 535, 59 A. 2d 913, and that on that case as authority this contest between two unions for labor control was not a labor dispute. Accordingly, on a finding that claimant's unemployment was involuntary and without fault of his own, the Board awarded compensation. The order is based upon error of law and must be reversed.

In the *Loerlein* case we refused to subsidize an illegal strike at the expense of contributing employers and the Commonwealth, under the then applicable amendment of §402(d) of the Unemployment Compensation Law—the Act of May 29, 1945, P. L. 1145. There should be no question that our conclusion that there was no industrial dispute, under the peculiar facts of that case, rested upon two grounds: The dispute did not involve a grievance against the employer over wages, hours or conditions of employment and the employer was not

involved[1]; in addition the objectives of the striking claimants were unlawful because in violation of an existing agreement with their employer binding upon them. The circumstances of that case clearly indicated that the suspension of work by the striking employes did not result from an industrial dispute, as contemplated by the then existing statute, but that their unemployment was voluntary and without good cause and as such offended against the declared public policy of the Act.

We have no intention of extending the holding of the *Loerlein* case beyond its own or analogous facts and the Act of Assembly there involved. The term "labor dispute" in the Pennsylvania Labor Anti-Injunction Act of June 2, 1937, P. L. 1198, §3(c), 43 PS §206c was defined to *include* "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment or concerning employment relations or any other controversy arising out of the respective interests of employer and employe, regardless of whether or not the disputants stand in the proximate relation of employer and employe, and regardless of whether or not the employes are on strike with the employer". An almost identical definition appears in the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, as amended, 43 PS §211.3. These definitions, in language as well as substance, reflect the definitions of the Norris-LaGuardia Act of March 23, 1932, c. 90, §13, 47 Stat. 73, 29 U. S. C. A. §113 and the Labor-Management Relations

---

1. The principle of *Miller v. Unemp. Comp. Board*, 152 Pa. Superior Ct. 315, 31 A. 2d 740, was appropriately invoked in the *Loerlein* case. It may not be an invariable or infallible test in all circumstances under the present amendment of the Unemployment Compensation Law in determining whether a work stoppage is from a labor dispute.

Act as amended June 23, 1947, c. 120, Title I, §101, 61 Stat. 137, 29 U. S. C. A. §152 (9) and indicate an intention to achieve unanimity in these important labor relation acts and to harmonize them with Congressional action in the same field.

The term "labor dispute" however is not defined in any way in the Pennsylvania Unemployment Compensation Act and the absence of definition, in our opinion, is not without significance. Even the formal definitions in the Acts of Congress and our labor relation Acts, supra, are not intended to be comprehensive to the point of excluding other circumstances which may constitute labor disputes. The inference is reasonable therefore that the legislature in the present Act did not intend the screening of facts through the mesh of any fixed definition of a labor dispute to determine by a process as simple as that whether a claimant is entitled to unemployment compensation. The absence of definition in the Act allowed us to look to the realities to ascertain whether there was an industrial dispute in the *Loerlein* case. There can be no doubt that a strike for recognition as a bargaining unit may be, and in this case, was, a labor dispute. Cf. *Lauf v. E. G. Shinner & Co.,* 303 U. S. 323, 58 S. Ct. 578; *Senn v. Tile Layers Protective Union, Local No. 5,* 301 U. S. 468, 57 S. Ct. 857. Here there was a controversy between the two labor unions for recognition as the authoritative collective bargaining agent, which involved the interests of both the employer and all employes. Actually the employer's refusal to recognize the C. I. O. union except on N. L. R. B. certification, in itself, stamped the contest a labor dispute.

Claimant and his A. F. L. associates were of the same grade or class of workers as the members of the striking C. I. O. union and the Board so found upon ample testimony. While the duties of the various employes differed somewhat in detail, yet they were all production workers in the manufacture of electrical equipment in the plant

of their employer in Beaver. Moreover, all of the employes were eligible to membership in either local union. Because claimant was a member of the same class as the striking workmen, he was ineligible for compensation by operation of subsection (3) of §402(d) of the Act, above quoted. This provision in effect puts the burden on all employes, of like grade, of acting with unanimity through a common collective bargaining agent or otherwise in all matters affecting their relations with their employer. Claimant was injured by the strike but the limitations of §402(d) on his right to compensation were imposed by the legislature. Claimant therefore may not complain for the legislature has the "sole power to determine the social and economic policies involved". *Urda Unemployment Compensation Case,* 161 Pa. Superior Ct. 594, 56 A. 2d 393. We agree with appellant that "No person unemployed because of a labor dispute can recover unemployment compensation unless he can prove that he is not directly interested, *and* he is not a member of the striking union, *and* he is not of the same grade or class of workers as the strikers. There is no justification for the position that the three conjunctive tests are merely one test phrased in three different ways." Each of these limitations of §402(d) on the right to unemployment compensation, imposed by the legislature, must be given effect. Section 51 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §551.

Since this was a labor dispute and claimant was of the same grade or class as the members of the C. I. O. union participating in the dispute, there can be no recovery. We are powerless to hold otherwise.

Order reversed.