Stahlman Unemployment Compensation Case.
Dravo Corporation, Appellant, *v.* Unemployment
Compensation Board of Review.

Argued April 16, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*John E. Laughlin, Jr.,* with him *Clyde H. Slease,* and *Thorp, Reed & Armstrong,* for appellant.

*Sydney Reuben,* Assistant Attorney General, with him *Thomas D. McBride,* Attorney General, for Unemployment Compensation Board of Review, appellee.

OPINION BY HIRT, J., September 11, 1958:

Dravo Corporation (the appellant here) was engaged in the so-called "heavy construction industry" in western Pennsylvania. In its construction business it employed workmen from a number of building crafts or trades, including carpenters, operating engineers, truck drivers and general laborers. The workmen in each of these groups were members of and were repre-

sented by one of four labor organizations, to-wit: The United Brotherhood of Carpenters and Joiners of America; the International Union of Operating Engineers; the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America; and the International Hod Carriers, Building and Common Laborers Union of America. These four unions for a number of years before, as well as during, 1956 were the certified collective bargaining representatives of the employes in the crafts which were represented by them. During the period, including the year 1956, employers in the heavy construction industry throughout the area had bargained, on a collective basis, with the four unions through a duly authorized employer's agency known as the "Constructors Association of Western Pennsylvania", which we will refer to as the Association. In practice labor negotiations between the Association and the four unions were carried on in joint sessions between a labor committee of the Association and a so-called Joint Council of the Unions. We will refer to this agency representing the unions as the Council. During the year a "multiple-employer" "multiple union" labor agreement was in effect which had been negotiated by the Association with the Council on behalf of the unions. By its terms the expiration date of this agreement was January 1, 1957. All of the four unions gave written notice to the Association on or before October 1, 1956, of their desire to terminate the existing agreement and to negotiate a new agreement. Negotiations, beginning about October 1, 1956, continued throughout the remainder of the year. Prior to January 1, 1957, the Carpenters' union came to terms with the Association by accepting its last offer as to increases in wages and other benefits, and this union entered into an interim agreement with the Association to that effect.

Before the end of 1956 the Association made an offer to all of the other unions, which it characterized as final, of a two-year agreement with a 7% wage increase for 1957 and an additional 7% increase for 1958. The three unions refused the offer and demanded higher wages. In addition the Laborers and Teamsters Unions insisted upon a pension plan, and the Operating Engineers Union demanded changes in arbitration provisions as stated in the 1956 agreement. On January 2, 1957, after the expiration of the existing agreement the members of the Laborers Union ceased work on the job, giving effect to a strike called by their union against the Dravo Corporation. The carpenters worked on January 2, 1957 but they were then notified by their foreman that there would be no further work. A similar notice was given to the operating engineers on that day. Since the work of all the crafts on the project then in the course of completion by Dravo, was closely interrelated, there was not work for the carpenters, the operating engineers and the teamsters when the laborers went out on strike. Negotiations continued and eventually on January 22, 1957 a new agreement was arrived at with the unions which embodied substantially the terms of the 1956 agreement, except as to wage rates and pension benefits. Members of the carpenters, the engineers, and the teamsters unions filed claims for unemployment compensation which were allowed by the bureau. The referee on agreed facts, substantially as above stated, sustained the decision of the bureau and on appeal the board affirmed the referee. By agreement, our decision in this appeal of Dravo from that final order will rule the claims of more than 50 workmen involved. The decision must be reversed; all of the claimants clearly are ineligible for compensation under §402(d) of the amending Act of May 23, 1949, P. L. 1738, 43 PS §802.

An employe is ineligible for compensation for any week under §402(d) of the Act "In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed; Provided, That this subsection shall not apply if it is shown that (1) he is not participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (2) he is not a member of an organization which is participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (3) he does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in, or directly interested in, the dispute." In construing that section we have said : " 'No person unemployed because of a labor dispute can recover unemployment compensation unless he can prove that he is not directly interested, *and* he is not a member of the striking union, *and* he is not of the same grade or class of workers as the strikers. There is no justification for the position that the three conjunctive tests are merely one test phrased in three different ways.' Each of these limitations of §402(d) on the right to unemployment compensation, imposed by the legislature, must be given effect. Section 51 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §551": *Curcio Unemployment Compensation Case,* 165 Pa. Superior Ct. 385, 392, 68 A. 2d 393. The unemployment of all the claimants, regardless of their craft and union affiliations resulted from the strike called by the laborers' union, in a labor dispute in which all of the claimants were involved. They all were "directly interested" in the labor dispute, which caused the stoppage of work

and the Joint Council of Unions was representing all of them in the negotiations with the Association for a new agreement. Because of their interest in the dispute claimants were ineligible for benefits under subsection (1) of §402(d). They were ineligible also under subsection (2) because of their membership in unions which were "directly interested" in the labor dispute. Moreover, all of the claimants, regardless of differences in their duties, were production workers in the heavy construction business of their employer and they therefore were of the same class as the striking members of the laborers' union who clearly were also construction workers. Because of the fact that all of the claimants fall within the same employment classification, they are rendered ineligible for compensation also under the limitation of subsection (3) of §402(d) of the Act. We have discussed the applicable principles in *Curcio Unemployment Compensation Case*, supra, and disposition of the present appeal is ruled by our decision in that case. Cf. also, *Byerly Unemploy. Compensation Case*, 171 Pa. Superior Ct. 303, 90 A. 2d 322 which (at pp. 311, 312) is to the same effect.

At the hearing on the appeal to the board from the referee's decision Dravo the appellant stated that since the carpenters' union had entered into an *interim* agreement with the Association, prior to January 1, 1957, referred to above, it would not oppose the payment of benefits to the members of that union, although Dravo "believed that such members were of the same grade or class of workers as the members of the other Unions." An employer's sympathetic attitude toward any one class of claimants can have no effect on the grant of unemployment compensation to them. The duty of the board, as we have said, is to safeguard and to conserve the fund made up of the contributions of employers generally, for the benefit of those workmen who

are able and willing to work and who are not barred from receiving benefits under the Act. *Phillips v. Unemply. Board,* 152 Pa. Superior Ct. 75, 83, 30 A. 2d 718; *Gagliardi Unemployment Compensation Case,* 186 Pa. Superior Ct. 142, 141 A. 2d 410. The interim agreement entered into by the carpenters with Dravo was intended to be operative only until the new labor agreement negotiated for the benefit of the members of all unions should go into effect. The carpenters therefore were ineligible for unemployment compensation for the same reasons which bar the claimant-members of the other three unions.

The decision as to all claimants is reversed.