Rusynko Unemployment Compensation Case.
Bethlehem Steel Company, Appellant, *v.*
Unemployment Compensation Board
of Review.

Argued November 12, 1959. Before HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (RHODES, P. J., absent).

*William H. Wood,* with him *Leon D. Metzger,* and *Hull, Leiby and Metzger,* for employer, appellant.

*Sydney Reuben,* Assistant Attorney General, with him *David C. Harrison,* Deputy Attorney General, and *Anne X. Alpern,* Attorney General, for Unemployment Compensation Board, appellee.

*Sidney G. Handler,* for claimant, intervenor-appellee.

OPINION BY HIRT, J., December 17, 1959:

In this unemployment compensation case the referee after hearing affirmed the decision of the bureau and awarded benefits as claimed. The board on appeal remanded the proceedings to the referee on July 31, 1956, and again on December 13, 1956, and for a third time on October 15, 1957. Further testimony was taken

by the referee in accordance with each of the remanding orders of the board. On February 3, 1959, but not until then, the board affirmed the decision of the referee and allowed the claim. We may take it that the facts were thoroughly developed at the four hearings before the referee and that on a reversal of the decision, which we find necessary, nothing could be gained by a further remand for still another hearing.

In reality there is little dispute as to the facts and the situation presented is not complex. Claimant had been employed by appellant at its plant in Bethlehem, Pennsylvania for many years. His job classification was that of a "slipmaker". In general the slipmaker's duties consisted in straightening structural steel sections, by means of gags, as they came to the shipping yard from other departments of the plant. The slipmakers also measured the sections for size and length against "hot saw report information"; they marked the sections by means of stencils with the heat number, the dimensions of each of them and the weight per foot; and they then allocated the finished steel sections to particular orders or to stock. In this the Saucon Division of the Bethlehem Company workmen in the initial operation prepared ingots in the "soaking pits" by heating the metal in its raw state to the proper rolling temperature; the ingots then were put through the blooming mills—an operation which prepared them, still in a rough shape, for final rolling to specified dimensions. After the steel members leave the rolling mills they "go to a hot bed" for final treatment, and thence to the structural steel shipping yard where the slipmakers, in the department where claimant was employed, perform the final operation in the processing of steel into structural members of specified lengths, weights and shapes. Thus it is apparent that uninterrupted work in claimant's department is dependent upon the continuous flow of material through integrated

processes from ingot material to all but the finished product.

On March 29, 1959 a small group of about 20 employes whose duty was the preparation of the ingots in the soaking pits went out on an unauthorized strike. They were impatient of the failure of management to work out the details of a local incentive pay agreement which required revision. According to appellant's testimony, in the form of answers to a questionnaire requested by the board, the number of Bethlehem Steel Company production and maintenance employes idled by this strike was about 1,600. At the hearings this number was not disputed but at the argument before us claimant's counsel questioned appellant's estimate although it was then admitted that 350 employes, whose duties had to do with successive operations, in the production of structural steel, were idled by the strike. Thirty-six claims were filed for unemployment compensation of which all but the present claim were disallowed. The striking workmen were members of Local Union 2599 of The United Steelworkers of America C.I.O., and all other employes involved in the production of structural steel, including the slipmakers, of whom claimant was one, were members of the same local union. The existing collective bargaining contract between the Company and the union was violated by the stoppage of work by the striking employes. This was a wildcat strike and representatives of the union attempted to persuade the 20 employes to return to work because of the violation of the union contract. When production was interrupted by the strike, in the soaking pits and blooming mill, claimant's department was shut down and there was no work for him because the flow of steel in the production of structural forms was stopped by the strike.

The findings of the board reflect the testimony which we have reviewed above. The board however

specifically found: "The claimant was not involved in the dispute and he was not directly interested in the dispute because the various departments have separate and distinct pay plans." On this finding the board concluded that claimant was entitled to benefits under §401(d) of the Unemployment Compensation Law, 43 PS §801, because he then was able and willing to work at his job, notwithstanding the stoppage of work resulting from a labor dispute. Section 402(d) of the Law, 43 PS §802, provides that: "An employe shall be ineligible for compensation for any week—(d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) . . . Provided, that this subsection shall not apply if it is shown that . . . (3) he does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in, or directly interested in, the dispute." Claimant was not interested in the strike and the controlling question therefore is whether claimant belonged to the same grade or class of workers as the striking workmen, and was ineligible for benefits under §402(d) for that reason. This question, which was not discussed by the board, becomes one for us to decide in this appeal as a matter of law as we have noted, on facts as to which there is no dispute. Although the number is not controlling we may ignore the inadvertent statement of the board that only 56 employes were affected in the light of the admission, above referred to, that at least 350 workmen were idled by the strike. A disqualifying stoppage of work may exist under §402(d) even though the cessation of work or the curtailment of production may be partial, and may affect only a relatively small number of the employes in the plant. We may note also in passing although not controlling that Bethlehem Steel Company

under its manual, evaluating and determining the rates of pay at its Saucon Division, classified slipmakers in the same grade or class as workmen who participated in the strike.

The fact that the various phases of the production line, from the raw product in the pits to the straightening process in the shipping yard may have been governed by separate pay plans, is not decisive of the question. There may be differences in basic, and particularly in incentive pay applicable to workmen in the same class of employes without affecting the result, although they perform different kinds of work on the same product. There was a labor dispute in this case which caused the stoppage. And here as in *Curcio Unemployment Compensation Case,* 165 Pa. Superior Ct. 385, 68 A. 2d 393, "While the duties of the various employes differed somewhat in detail, yet they were all production workers" members of the same union, and all of the workers were engaged in some phase of an integrated service ending in the same finished product. In *Stahlman Unempl. Compensation Case,* 187 Pa. Superior Ct. 246, 144 A. 2d 670, the Dravo Corporation was engaged in the heavy construction industry and in its business employed workmen from four different crafts who were members of four separate unions. We there held that "all of the claimants, [laborers, carpenters, operating engineers and teamsters], regardless of differences in their duties, . . . were of the same class as the striking members of the laborers' union . . ." and therefore all were disqualified under §402(d). In *Oliver Unempl. Compensation Case,* 189 Pa. Superior Ct. 362, 150 A. 2d 361, there was a reversal of the board as a matter of law on undisputed facts. In that case the work done in the steel mill involved, was "a continuous integrated production process". There the stoppage resulted when a group of employes engaged as pilers, stacking the finished product,

stopped work because, as here, of an argument over the revision of an existing wage incentive plan. We in that case, by Judge WRIGHT, found that the claimants, who were production workers rolling steel, were of the same class as the striking pilers and were disqualified on that ground under §402(d). On the principles which we have consistently applied in the above cases, the claimants are ineligible for benefits; the facts admit of no other conclusion.

Decision reversed.