## Oluschak Unemployment Compensation Case.

Argued March 23, 1960. Before RHODES, P. J., GUN-THER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONT-GOMERY, JJ.

*David Cohen,* for claimant, appellant.

*Sydney Reuben,* Assistant Attorney General, with him *Anne X. Alpern,* Attorney General, for Unemployment Compensation Board of Review, appellee.

*John G. Wayman,* with him *H. T. Herrick,* and *Reed, Smith, Shaw & McClay,* for employer, intervening appellee.

OPINION BY WATKINS, J., April 13, 1960:

This is an unemployment compensation case in which the Bureau of Employment Security, the Referee and the Board of Review all concluded that the claimant-appellant, Joseph Oluschak's unemployment was the result of a labor dispute and that he was ineligible

for benefits under the provisions of Section 402(d) of the Unemployment Compensation Law, Act of December 5, 1936, P. L. 2897, as amended, 43 PS §751 et seq.

The claimant was employed by the Westinghouse Electric Company, Lester, Pennsylvania from sometime in 1941 until October 14, 1955. On that date he became unemployed by reason of a work stoppage resulting from a labor dispute between his union and his employer. The strike ended on August 8, 1956, and he was recalled to work on September 22, 1956, and is presently working for Westinghouse.

All the facts and circumstances of the labor dispute were presented and passed upon by this Court in *Gray Unemployment Compensation Case*, 187 Pa. Superior Ct. 425, 144 A. 2d 856 (1958), in which we held that the work stoppage constituted a strike and that the striking claimants were disqualified for benefits under Section 402(d) of the Unemployment Compensation Law. The record indicates that the claimant, while on strike at Westinghouse, sought and obtained employment at H. W. Butterworth & Sons, Philmont Road, Bethayers, Pa. The employment began on October 23, 1955 and ended by lay-off on March 9, 1956. He did not at any time sever his employment or resign from the job at Westinghouse nor did he give to his employer or anyone else any indication of an intention so to do. He testified that the new job paid $1.75 per hour plus bonus, on piece work, and his job at Westinghouse paid, prior to the strike, $2.10½ cents per hour; that it was similar work; that "I said I would stay if the job was dependable because with the bonus there, it would be the same as I was getting and I said if I made out, I would stay there"; and that he joined the union but continued his membership in the Westinghouse union. He remained on the Westinghouse payroll as one of the striking employees, with all the benefits of fifteen years

seniority, insurance and the other incidents of that employment. After said strike, he was recalled, and with other employees of Westinghouse received the additional benefits won by the strike.

These facts present for our determination a question of first impression in this Commonwealth, as to whether the intervening employment of a striking employee by another employer, removes the disqualification of Section 402(d) of the Act. Although this issue has not been directly passed upon by the Courts of this Commonwealth it has been decided in other jurisdictions where the disqualifying statute is similar and their decisions should be helpful guides to us.

Section 402(d) of the Unemployment Compensation Law, supra, provides, inter alia: "An employee shall be ineligible for compensation for any week—(d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed: Provided, That this subsection shall not apply if it is shown that (1) he is not participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (2) he is not a member of an organization which is participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (3) he does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in, or directly interested in, the dispute."

The earliest case where the question here involved was decided is reported in *Hopkins v. California Employment Commission*, 24 Cal. 2d 744, 151 P. 2d 229 (1944). The California Act disqualifying a striking employee reads as follows: "An individual is not

eligible for benefits for unemployment, and no such benefit shall be payable to him . . . (a) if he left his work because of a trade dispute and for the period during which he continues out of work by reason of the fact that the trade dispute is still in active progress in the establishment in which he was employed." The Supreme Court of California held: "The termination of a claimant's disqualification by subsequent employment thus depends on whether it breaks the continuity of the claimant's unemployment and the casual connection between his unemployment and the trade dispute. Such employment must be bona fide and not a device to circumvent the statute. * * * *It must sever completely the relation between the striking employee and his former employer.* The strike itself simply suspends the employer-employee relationship but does not terminate it. . . ." (Underscoring ours).

In *Westinghouse Electric Corporation v. Board of Review,* 25 N.J. 221, 135 A. 2d 489 (1957), the Supreme Court of New Jersey held that under the statute rendering any person unemployed due to a work stoppage because of a labor dispute ineligible to receive unemployment compensation benefits, that this disqualification was not removed if the unemployed person, because of the strike, obtained temporary work elsewhere which terminated while the strike was still in progress at his regular place of employment. The Court in so deciding considered the following facts of controlling importance, at page 490: ". . . None of the claimants resigned from Westinghouse or surrendered the right to return to work for Westinghouse upon termination of the strike. They all intended to return to Westinghouse as soon as the strike ended and in fact they did so. . . . Neither Westinghouse nor the striking employees did anything which was designed to effect a severance of their employment relationship; and all the.

parties concede that there was no such severance. See Browning King Co. of N. Y. v. Local 195, 34 N.J. Super. 13, 26, 111 A. 2d 415 (App. Div. 1955); Textile Workers Union of America v. Paris Fabric Mills, Inc., 22 N.J. Super. 381, 383, 92 A. 2d 40 (App. Div. 1952); Jeffery-De Witt Insulator Co. v. N. L. R. B., 91 F. 2d 134, 112 A.L.R. 948 (4 Cir., 1937), certiorari denied 302 U.S. 731, 58 S. Ct. 55, 82 L. Ed. 565 (1937)." The New Jersey statute where it is pertinent to our problem reads as follows: "(d) For any week with respect to which it is found that his unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed; provided, that this subsection shall not apply if it is shown that: (1) He is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work; and (2) He does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute; provided, that if in any case in which (1) or (2) above applies separate branches of work which are commonly conducted as separate businesses in separate premises are conducted in separate departments of the same premises, each such department shall, for the purpose of this subsection, be deemed to be a separate factory, establishment, or other premises."

And in discussing the New Jersey statute, which is quite similar to Section 402(d) of our Act, the New Jersey Supreme Court said, ". . . The claimants here were striking employees of Westinghouse during the strike and returned to work at Westinghouse upon termination of the strike. They were clearly within the class of persons which the Legislature intended to dis-

qualify from benefits. When they took their temporary employment they did not alter their status as striking employees of Westinghouse, and when their temporary employment ended they remained out of work because of the strike. To pay them benefits at that time would run counter to the very reasons for the adoption of the disqualification clause. . . ." See also: *Alin v. Alaska Employment Security*, 17 Alaska 607; *N. J. Zinc Company v. Board of Review*, 25 N.J. 235, 135 A. 2d 496; *Gentile v. Director of Division of Employment Security*, 329 Mass. 500, 109 N.E. 2d 140.

It is true that there seems to be a conflict of authority in New York and Florida with the above decisions but a careful examination of the cases indicate that they turned upon the interpretation of the language of disqualifying statutes dissimilar to ours. *Bruley v. Florida Industrial Com., Florida*, 101 So. 2d 22; *Richard E. Lasher v. Industrial Commissioner, New York*, 126 N.E. 2d 312.

It should be noted that in addition to the general rule discussed in *Gentile v. Director of Division Employment Security*, supra, and in support of that position, the Massachusetts Supreme Court in that case said, "In the absence of a statute it has been generally regarded that employees who quit their work to wage a lawful strike in a lawful manner still continue as employees at least in reference to matters connected with the strike." The Supreme Court of Pennsylvania in *Melchick Unemployment Compensation Case*, 396 Pa. 560, 154 A. 2d 875 (1959), held that "a striker continues as an employee during the strike and only removes himself from actual labor. He retains his status at all times and again becomes a working employee when the strike is terminated." See also: *Burger Unemployment Compensation Case*, 168 Pa. Superior Ct. 89, 77 A. 2d 737 (1951). It is important

to note that it has been held that the employer cannot "toll" continuous service credit because of a strike. "It is well settled that, except to the extent that a striker may be replaced during an economic strike, his employment relationship cannot otherwise be severed or impaired because of his striking activity." *General Electric Co.*, 80 NLRB 510 (1948).

We have held in interpreting section 402(d) of the Act, in *Curcio Unemployment Compensation Case,* 165 Pa. Superior Ct. 385, 392, 68 A. 2d 393 (1949) that "No person unemployed because of a labor dispute can recover unemployment compensation unless he can prove that he is not directly interested, and he is not a member of the striking union, and he is not of the same grade or class of workers as the strikers. There is no justification for the position that the three conjunctive tests are merely one test phrased in three different ways. Each of these limitations of Section 402 (d) on the right to unemployment compensation, imposed by the legislature, must be given effect."

The appellant contends that a worker who voluntarily quits without a necessitous or compelling reason or for wilful misconduct may cure his disqualification by obtaining employment elsewhere, and earning eight times the amount of his weekly benefit rate. He argues that failure to give striking claimants the same treatment discriminates against organized workers. But in those cases the employer-employee relationship is severed, either by the claimant voluntarily quitting his job or by being fired so that he has lost whatever work benefits inured to that employment. The claimant's situation is entirely different in that there is no quitting or no discharge and the work stoppage resulting from a labor dispute is a continuous one for both employer and employee. Here, had he informed Westinghouse that he had quit or by other means severed his employ-

ment, a completely different question would be before us. This claimant could have severed his employment and brought himself clearly within subsections (1), (2) and (3) of section 402(d), supra, by resigning from Westinghouse and the Westinghouse union, so that clearly he would no longer be interested in the outcome of the labor dispute.

The burden was upon the claimant to prove he was entitled to unemployment compensation benefits. *Smith Unemployment Compensation Case,* 167 Pa. Superior Ct. 242, 74 A. 2d 523 (1950). An unemployed person because of a labor dispute, can only recover unemployment compensation when he can prove that he is not directly interested, and that he is not a member of the striking union and that he is not in the same grade or class of workers as the strikers. *Curcio Unemployment Compensation Case,* supra; *Stahlman Unemployment Compensation Case,* 187 Pa. Superior Ct. 246, 144 A. 2d 670 (1958). In this case the claimant must establish, that although at the time of the strike he was disqualified under Section 402(d), he now comes within subsections (1), (2) and (3), by showing he obtained a new job and severed his employment with Westinghouse. The evidence of an intervening job, standing alone, is not sufficient. Such a job could be stop-gap, part time or temporary employment accepted during the strike for economic reasons. The claimant could continue to be "participating in or directly interested in the labor dispute which caused the stoppage of work" and could still be "a member of an organization which is participating in or directly interested in the labor dispute which caused the stoppage of work" and could be in the same grade or class of workers as the strikers. His recall at the end of the strike by Westinghouse is evidence of his continued membership in the union and of the maintenance of his employee status on the West-

inghouse payroll, from which it can be inferred that he continued to be "directly interested" in the outcome of the labor dispute.

The credibility of witnesses was for the determination of the Unemployment Compensation Board of Review. The board was justified in refusing to accept the claimant's ambiguous statement that "he would stay if the job was dependable" as evidence of a severance of employment from Westinghouse, especially when by so doing, he was giving up all the work benefits he had piled up with fifteen years of employment at Westinghouse, and the board was justified in concluding that this claimant had failed to sustain his burden of removing the disqualification of section 402(d) to establish his right to benefits.

Decision affirmed.

---

DISSENTING OPINION BY MONTGOMERY, J.:

I have dissented in this case because throughout the record it appears that a striking employe must take formal action to give notice to his employer of the termination of his employment before he may seek such employment elsewhere that will be recognized as a basis for unemployment compensation. I do not understand that requirement to be the law. If the evidence proves the fact that the employe in good faith (and not merely as a device to avoid the effects of section 402(d) of the Unemployment Compensation law) seeks and secures new permanent employment and qualifies otherwise, he should not be denied benefits simply because he does not notify his former employer of his action and good fortune.

The case of *Mark Hopkins, Inc. v. California Employment Commission,* 24 Cal. 2d 744, 151 P. 2d 229

(1944) (cited in the majority opinion), which appears to be the leading case on the subject, held that the termination of a claimant's disqualification by subsequent employment depends on whether it in fact breaks the continuity of the claimant's unemployment and the causal connection between his unemployment and the trade dispute; that such subsequent employment must be bona fide and not a device to circumvent the statute; and that it must be permanent and full time and completely replace the former employment and terminate the relationship between the claimant and his former employer; but it did not require formal notice to the former employer of such termination.

In *Claims of Lasher*, 283 App. Div. 1132, 131 N.Y.S. 2d 669, aff. 308 N.Y. 878, 126 N.E. 2d 312, the subsequent employment lasted only six days but was held to terminate the previous employment and subsequent unemployment occasioned by a labor dispute. The former employer was not notified of the severance and termination. In that case the new employment was in a different community, which makes it similar in that respect to our present case, wherein the earlier employment was 25 miles from home and the new employment only three miles away.

There are many facts in this case indicating the good faith of the claimant. He was not engaged in striking activities. He became unemployed on October 14, 1955, by reason of the strike and immediately sought new work, finding it on October 19, 1955, with H. W. Butterworth and Sons within three miles of his home. That he joined the union which had bargaining rights for that company is a strong argument in his favor, since union rights are not as a rule granted to temporary employes. He worked continuously and steadily for over four months or until he was laid off by a work stoppage at that plant. Nevertheless, he again persisted in his endeavors to find work but was unsuccess-

ful until seven weeks after the strike at Westinghouse was settled and work resumed there. That event occurred on August 8, 1956; but, regardless, he did not secure a return to his old job until September 24, 1956.

I think it decidedly unfair and contrary to the true intent of the Unemployment Compensation law to penalize a person who honestly tries to support himself and family during a period of unemployment due to a labor dispute simply because he neglects to notify his employer of his new employment. The law was intended to encourage employment and not discourage it.

Therefore, since there has been no specific finding on the bona fides of his effort to secure new permanent employment and the decision of the Board as affirmed by the majority opinion of this Court is based upon what I think is a misunderstanding of the law relating to the manner that severance of former employment may be accomplished, I would reverse the decision of the Board and remand the case for a specific finding on that point. If his new employment met the standards set forth in the *Hopkins* and *Lasher* cases (supra), his last place of employment was the Butterworth Company and not the Westinghouse Electric Corporation; and, therefore, he was not disqualified for unemployment benefits under section 402(d) of the act.