Pulver Unemployment Compensation Case.
Sprague and Henwood, Inc., Appellant, *v.*
Unemployment Compensation Board of
Review, Department of Labor and
Industry.

Argued September 16, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*Sheldon Rosenberg,* with him *Nogi, O'Malley & Harris,* for appellant.

*Sydney Reuben,* Assistant Attorney General, for Unemployment Compensation Board of Review, appellee.

*Jerome H. Gerber,* with him *Sidney G. Handler,* and *Handler and Gerber,* for intervening appellee.

OPINION BY WATKINS, J., December 16, 1965:

This is an unemployment compensation case in which the employer-appellant, Sprague and Henwood,

Inc. appealed from the decision of the Unemployment Compensation Board of Review that held a claimant, Benjamin Pulver, Jr. to be entitled to benefits on the ground that his unemployment was due to a severance of the employer-employee relationship by the employer. The Bureau and the Referee had found him ineligible for benefits under §402(d) of the Unemployment Compensation Law, 43 PS §802(d). It was stipulated that the decision in this case was to govern the cases of thirty-four claimants involved in the same problem.

The thirty-four claimants were employed as production workers by the appellant company. Their last day of work was April 5, 1963. The employer is engaged in the manufacture of diamond core earth drilling machines. The claimants were members of the bargaining unit represented by the International Association of Machinists, District 128, Local 1971. On January 8, 1963, the employer and the union began negotiating a collective bargaining agreement and about eighteen meetings were held between that date and March 23, 1963. No agreement was reached, a strike vote was taken and a work stoppage began on April 8, 1963. At that time only thirty production workers reported for work out of a total of one hundred fifty such workers. None of the claimants reported so that as of that time the claimants were unemployed due to a labor dispute and not entitled to benefits under §402(d) of the Unemployment Compensation Law, supra.

On April 8, 1963, the employer sent a letter to the workers which read as follows: "You did not report for work this morning. This is to inform you that the Plant is open for its normal operations and work is available for you." This work was available under the same terms and conditions that existed prior to the strike vote and was the reason for the strike vote. At this date, therefore, the claimants were still unemployed due to a work stoppage as a result of the labor

dispute. Some of the striking workers returned to work at various later dates but the claimants continued in their strike.

On June 20, 1963, and on various dates up to and including August 30, 1963, the employer-appellant sent a letter to the claimants which read as follows:

"You have been permanently replaced. In view of this we are enclosing a check in the amount of $4.69 which represents the balance in your bond account. We are also enclosing a check in the amount of $22.02 which represents the amount that you have contributed to the Sprague & Henwood, Inc. Retirement Plan from January 1, 1963 to the time you were permanently replaced. We are also enclosing forms to be completed by you and returned to William von Bargen, Aetna Life Insurance Company, Northeastern National Bank Building, Scranton, Pennsylvania.

"The master contract provides that money contributed by you for contract years prior to January, 1963 may, at your option, be held by the Aetna Life Insurance Company for you until your normal retirement date and then paid to you in cash or as a monthly income. If you now want your money plus interest, you must complete and return the enclosed forms as soon as possible.

"Conversion Notices for your Group Life Insurance and Group Hospital-Surgical Insurance coverage have been forwarded this date to Mr. Robert J. Carter, International Association of Machinists, 537 Linden Street, Scranton 3, Pennsylvania, for distribution.

"Since you have been permanently replaced, will you please remove any of your personal belongings now on the Sprague & Henwood, Inc. property. Please contact the Personnel Department before entering the plant."

In all, fifty-nine employees received this letter. In *Melchick Unemployment Compensation Case,* 396 Pa.

560, 154 A. 2d 875 (1959), the Supreme Court held that "A striker continues as an employee during the strike and only removes himself from actual labor. He retains his status at all times and again becomes a working employee when the strike is terminated."

At the outset it should be pointed out that the decision of the Bureau and the Referee holding the claimant disqualified was based on §402(d), supra, and not under §402(b)(1) of the law, 43 PS §802(b)(1). This section is the voluntary quit section and has incorporated in it the exception provisions concerning work stoppage as the result of a labor dispute and suitable work. We do not believe this section applies to the problem in the instant case. We said in *Mattson Unemployment Compensation Case,* 194 Pa. Superior Ct. 307, at page 314, 167 A. 2d 321 (1961): "We believe that 'work stoppage' can be uniformly interpreted as 'plant stoppage' and still not bring about the injustice pointed out by Justice COHEN in the Melchick case. Despite the problem posed by the definition of 'work stoppage', doesn't this case also call for the interpretation of 'suitable work' requirements of the law, 43 PS §753(t)(1), which reads as follows: 'Suitable work means all work which the employe is capable of performing . . . However, notwithstanding any other provisions of this subsection no work shall be deemed suitable in which (1) the position offered is vacant, due directly to a strike, lockout or other labor dispute.'" See also *Rusynko Unemployment Compensation Case,* 191 Pa. Superior Ct. 434, 156 A. 2d 576 (1949).

This Court held that even intervening employment by another employer does not remove the disqualification under §402(d) of the law, supra, where the employee has not severed his employment with the employer against whom he is striking. *Oluschak Unemployment Compensation Case,* 192 Pa. Superior Ct. 255, 159 A. 2d 750 (1960). We said in that case, at page 259:

"Neither Westinghouse nor the striking employees did anything which was designed to effect a severance of their employment relationship; and all the parties concede that there was no such severance." We further said at page 262: "Here, had he informed Westinghouse that he had quit or by other means severed his employment, a completely different question would be before us. This claimant could have severed his employment and brought himself clearly within subsections (1), (2) and (3) of section 402(d), supra, by resigning from Westinghouse and the Westinghouse union, so that clearly he would no longer be interested in the outcome of the labor dispute." See *Curcio Unemployment Compensation Case*, 165 Pa. Superior Ct. 385, 392, 68 A. 2d 393 (1949).

In the instant case the employer severed the employment relationship by its letter to the claimants, with the same result to the relationship as if the employee had accomplished it by resignation. The letter, in so many words, advised the employee that he had been permanently replaced; his seniority was dissolved; the balance of his bond account was returned; the amount contributed to the retirement plan was returned; his life insurance and hospitalization were terminated; and he was instructed to remove all his personal belongings still on the plant property. From the time of this notice he was not only removed from actual labor because of the strike but the employment relationship was severed by the employer. The reasoning in the *Oluschak* case, supra, that determined that an employee must sever the employment relationship to take him out of the disqualification of the law also applies to the situation where the employer by his action severed the employment relationship as in this case.

The question of the availability of the claimants for work because it is now alleged that some of them appeared for undetermined periods of time at sporadic

intervals on the picket line was not raised before the compensation authorities. There is no finding of fact concerning it. The general rule is that on appeal we should not consider questions and issues not raised in the tribunal below. *Erie Drug Company Case,* 416 Pa. 41, 204 A. 2d 256 (1964).

We agree, however, with counsel for the claimant that, "the claimant by registering for work and declaring his availability for full time work established a prima facie presumption of availability, Sturdevant Unemployment Comp. Case, 158 Pa. Superior Ct. 548, 45 A. 2d 898 (1946). This presumption is certainly not rebutted by evidence of infrequent excursions to the picket line, where such picketing was completely optional with the claimant. The presumption is reinforced, not rebutted, by the fact that the claimants actually engaged in full time employment during the picketing which demonstrates their ability to either work instead of picketing or work and picket concurrently."

Decision affirmed.

------

DISSENTING OPINION BY ERVIN, P. J.:

I dissent. Claimants here were clearly not eligible for compensation during the period for which they were out on strike. Claimants were members of the bargaining unit, though not members of the union. The strike or work stoppage began April 8, 1963 because no collective bargaining contract had been agreed upon. Some sixteen claimants here seek compensation from the date (June 20, 1963) they were notified by letter of the employer as permanently replaced, to the end of the strike on November 26, 1963. During the strike some 130 employes reported for work and production at the plant continued throughout the strike.

The issue to be decided in this case is whether or not employes who had been permanently replaced dur-

ing a strike, although production at the plant continued, are eligible to receive benefits from the time of replacement while the strike remains in progress.

Section 402(d) of the Act, 43 PS §802(d), provides: "An employe shall be ineligible for compensation for any week— ...

"(d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lockout) at the factory, establishment or other premises at which he is or was last employed: Provided, That this subsection shall not apply if it is shown that (1) he is not participating in, or directly interested in, the labor dispute which caused the stoppage of work. . . ."

Claimants admit they are disqualified from the time of the commencement of the strike, until replacement, because their unemployment was due to a stoppage of work which existed because of a labor dispute under §402(d) of the Act, supra. A disqualifying stoppage of work may exist under §402(d) even though the curtailment of production may be partial only: *Rusynko Unemployment Compensation Case,* 191 Pa. Superior Ct. 434, 438, 156 A. 2d 576. Of course, where the strike involves all employes at the plant and causes a shutdown, and the work stoppage due to a labor dispute is not a lockout, claimants are disqualified under §402(d): *Oluschak Unemployment Compensation Case,* 192 Pa. Superior Ct. 255, 257, 159 A. 2d 750 (1960), citing *Gray Unemployment Compensation Case,* 187 Pa. Superior Ct. 425, 144 A. 2d 856 (1958).

The fundamental purpose of the Act is to give compensation to workers unemployed through no fault of their own: *Harris Unemployment Compensation Case,* 185 Pa. Superior Ct. 235, 239, 138 A. 2d 207. Here the work stoppage due to a labor dispute, i.e., the strike, was the underlying cause of claimant's unemployment, during the *entire period* of the strike, and claimant's

status as a striker was not altered by the letter of replacement. The replacement was made necessary by the strike, and the strike caused the unemployment. The purpose of the disqualifying clause in 402(d) is to prevent employes from receiving compensation during the period of the strike, and the disqualification is not removed if the employe obtains work elsewhere: *Oluschak Unemployment Compensation Case,* supra, citing *Westinghouse Electric Corporation v. Board of Review,* 25 N.J. 221, 135 A. 2d 489 (1957).

Claimants argue that the employer-employe relationship was terminated by the replacement during the strike; that the replacement thereafter caused the unemployment, and claimants are entitled to benefits. Whether the employer-employe relationship was terminated by the replacement is doubtful, in view of the fact that the contract negotiated as a result of the strike gave claimants the right to return to their jobs within time limits. Even assuming, however, that the replacement did terminate the employer-employe relationship (Cf. *Oluschak Unemployment Compensation Case,* supra) the original and proximate cause of claimants' unemployment was the strike or work stoppage, and, under §402(d) this ineligibility remained in force until the strike ended. The holding of the majority, that the permanent replacement caused the unemployment thereafter, during the strike, is not realistic nor in accordance with the purposes of the Act.

Section 402(b) of the Act provides: "An employe shall be ineligible for compensation for any week— . . . (b)(1) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. . . . And provided further, That the provisions of this subsection shall not apply in the event of a stoppage of work which exists because of a labor dispute within the meaning of subsection (d)."

The term "stoppage of work which exists because of a labor dispute," as used in §402(b), supra, has been interpreted to refer to plant operations rather than to cessation of the employe's labor: *Harris Unemployment Compensation Case,* supra; *Mattson Unemployment Compensation Case,* 194 Pa. Superior Ct. 307, 167 A. 2d 321 (1961). Under this interpretation, there was no cessation of plant operations in the instant case; the exception in 402(b)(1) does not apply, and claimants are ineligible as voluntary quits (Cf. *Harris Unemployment Compensation Case,* supra, and *Mattson Unemployment Compensation Case,* supra) since they left the plant when work was available and production continued. Having left their employment April 8, 1963, claimants remained unemployed during the strike, and the letter of permanent replacement would not alter their ineligibility. As Judge WATKINS stated in *Mattson Unemployment Compensation Case,* supra, "If, however, stoppage of work refers to the employee's labor, then, whether he was replaced or not is immaterial as his stoppage of work continued as a result of a labor dispute for the entire duration of the strike."

There is considerable dispute as to whether "stoppage of work" means cessation of plant operations, under §402(b), or cessation of the employe's labor only, and the view has been expressed that this term should be interpreted similarly in both 402(b) and 402(d): *Mattson Unemployment Compensation Case,* supra, discussing the effect of *Melchick Unemployment Compensation Case,* 396 Pa. 560, 154 A. 2d 875 (1959). The *Melchick* case, supra, does not control here, for the Supreme Court there stated: "Since both 402(b) and (d) apply to a work stoppage *during* a labor dispute, neither subsection applies here [where the claim for benefits was after the strike ended]. . . ."

Under any analysis, therefore, claimants are ineligible here, either as voluntary quits under §402(b), dur-

ing the entire period of the strike, or under §402(d) due to a "stoppage of work, which exists because of a labor dispute . . . at the factory" where claimants were last employed, also during the entire period of the strike. Claimants' unemployment was caused by the strike, and ineligibility here is clear, under §402(d), regardless of any controversy over the interpretation of the exclusionary clause in 402(b), supra.

The record here shows that claimant continued to picket the employer's plant after he had been permanently replaced and that he did more than his share of picketing. Although the board made no finding on this point, it appears that claimant(s) was unavailable for work during the strike and therefore ineligible for benefits under §401(d) of the Unemployment Compensation Law, 43 PS §801(d).

I would reverse the decision of the board.