IN THE MATTER OF: MICHAEL W. SARVIS, WILLIAM E. FURR, WADE H. RABON, RALPH A. McCRAY, CLAY I. CALL, MIKE H. KIVETT, BOBBY W. RABON, JAMES K. BURCHETT, HARRISON E. EMMERT, ARNOLD B. SMITH, ROBERT J. CAMP, CHARLES W. CLARK, JR., H. T. VARNUM, HOWARD D. PEEL, MIRLIN H. PEEL, EUGENE C. McCRAY, EMPLOYEES, HIGH POINT SPRINKLER COMPANY, EMPLOYER; AND EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA

No. 7718SC626

(Filed 6 June 1978)

1. **Master and Servant § 109— unemployment compensation—striking employees —replacement of employees—offer to return to work**

    The statute disqualifying for unemployment compensation benefits a person whose unemployment "is caused by a labor dispute in active progress," G.S. 96-14(5), does not necessarily disqualify striking employees who are subsequently replaced by permanent replacements where there is a genuine offer on the part of the employees to return to work. Whether replacements are permanent, thereby severing the employer-employee relationship and ending the labor dispute, depends upon the facts of the particular case.

2. **Master and Servant § 109— unemployment compensation—striking employees —replacement of employees—offer to return to work—effect of union certification petition**

    Where sixteen employees went on strike because of a labor dispute with their employer, the employer notified the employees to return to work by 2 March or permanent replacements would be hired, on 2 March a petition for certification of a union as bargaining agent at the employer's premises was filed with the NLRB, the employees on 5 March notified the employer of their unconditional offer to return to work, and fourteen of the employees were not rehired because replacements had been found for them, the labor dispute was no longer "in active progress" after the unconditional offer to return to work on 5 March, and the fourteen employees were entitled to unemployment compensation benefits after that date, unless the trial court should find that the petition for certification filed with the NLRB was related to the strike and would prolong the employer-employee relationship.

3. **Master and Servant § 109— unemployment compensation—striking employees —replacement of employees—offer to return to work—unfair labor practice charge**

    Striking employees who were replaced and who made an unconditional offer to return to work were not disqualified to receive unemployment compen-

sation benefits because they filed an unfair labor practice charge with the NLRB since (1) the charge was not related to the strike and (2) employees otherwise entitled to unemployment compensation benefits cannot be deprived of such benefits because they exercised rights given them by the National Labor Relations Act.

APPEAL by Michael W. Sarvis and other employees and Employment Security Commission of North Carolina from *Collier, Judge*. Decision entered 29 March 1977, in Superior Court, GUILFORD County. Heard in the Court of Appeals 26 April 1978.

On 27 February 1976, a labor dispute arose between sixteen employees (hereinafter Employees) of High Point Sprinkler Company (hereinafter Employer), concerning wages, fringe benefits, accounting methods for handling the profit sharing plan for Employees, and the attempted transfer of one employee to Macon, Georgia. Employees went on strike and formed and maintained picket lines until 5 March 1976. On 1 March Employer notified Employees that unless they reported to work the following day permanent replacements would be sought.

None of the Employees returned to work and, on 3 March 1976, Employer hired fifteen replacements. Thereafter, on 5 March, Employees notified Employer of their "unconditional offer" to return to work immediately. Two of the strikers subsequently returned to work, but the remaining Employees were not rehired because Employer no longer had work available for them.

Meanwhile, on 4 March, Employer had filed separation notices with the Employment Security Commission (hereinafter Commission) stating that each employee, being an economic striker in a labor dispute, had been replaced by a permanent replacement. Employer requested that its unemployment benefits account not be charged in the event such Employees were otherwise eligible to receive unemployment compensation benefits. Employees later applied to the Commission for such benefits, and on 19 March 1976, Employer's request for noncharging was disallowed. In early April 1976, a Special Appeals Deputy affirmed the ruling and held that, pursuant to G.S. 96-14(5), Employees were disqualified for benefits from 27 February to 6 March 1976, the day following their unconditional offer to return to work, but that they were not so disqualified thereafter. The Commission affirmed the Special Appeals Deputy, and Employer then appealed to Superior Court.

The Superior Court affirmed the facts found by the Special Appeals Deputy but reversed the Commission's conclusions of law.

In order to interpret the labor dispute provisions of the State Employment Security Laws, the Court concluded that the definition of "labor dispute" as found in the Norris-LaGuardia Act, 29 U.S.C. § 101 *et seq.*, should apply. That definition is as follows:

"(c) The term 'labor dispute' includes any controversy concerning terms or conditions of employment or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." Title 29 U.S.C. § 113(c).

The court also concluded that under the Employment Security Law the hiring of replacements to fill the job positions of the employees was irrelevant because unemployment originally caused by a labor dispute is not changed as to its cause by subsequent events.

On or about 9 March 1976 Employees filed an unfair labor practice charge before the National Labor Relations Board (NLRB). As to this activity, the court concluded that "a finding as to the period of pendency of such charge is relevant and necessary," and the cause was remanded to the Commission for a finding as to the date on which such charge was brought to a final determination.

A Petition for Certification of Bargaining Representative also was filed before the NLRB. The court concluded that Employees' disqualification "would continue so long as any such Petition was pending." The court directed the Commission to make a finding of fact "as to whether such a Petition was filed and, if so, when it was filed and the period during which it was pending, such period ending when such petition was either withdrawn or dismissed, or the results of an election conducted pursuant thereto were finally certified without further proceedings in relation thereto pending before the NLRB."

In re Sarvis

From the Order remanding the case to the Commission for findings relating to the pendency of the proceedings before the NLRB, both Employees and the Commission appealed.

*Smith, Patterson, Follin, Curtis & James, by Henry N. Patterson, Jr., and Michael K. Curtis, for Employee appellants.*

*Howard G. Doyle and Thomas S. Whitaker for Commission appellant.*

*Turner, Enochs, Foster & Burnley, by C. Allen Foster and Eric P. Handler, for Employer appellee.*

ARNOLD, Judge.

G.S. 96-14 reads in pertinent part:

"An individual shall be disqualified for [unemployment compensation] benefits:

\*   \*   \*

"(5) For any week with respect to which the Commission finds that his total or partial unemployment is caused by a labor dispute in active progress . . . at the factory, establishment, or other premises at which he is or was last employed . . . ."

[1] A reading of the statute, and relevant case law from other jurisdictions, supports a conclusion that Section (5) does not necessarily disqualify striking employees who are subsequently replaced by permanent replacements where there is a genuine offer on the part of the employees to return to work. First of all, the disqualification, according to the statute, does not apply unless it is found that the unemployment "is caused by a *labor dispute in active progress* . . . ." The trial court's conclusion that "unemployment which is originally caused by a labor dispute is not changed as to its cause by . . . subsequent events" cannot be supported from the statute unless the phrase "in active progress," modifying "labor dispute," is deleted. The General Assembly may accomplish this by a simple amendment, but this Court cannot.

Secondly, decisions from our sister states which have considered this question should not be disregarded. For example, in

*Ruberoid Co. v. California Unemployment Ins. Appeals Board*, 59 Cal. 2d 73, 74, 27 Cal. Rptr. 878, 879, 378 P. 2d 102, 103 (1963), the Supreme Court of California held

> "[T]hat since the permanent replacement at once prevents any choice or volition on the part of the worker to return to the job and since it severs the trade dispute as the cause of unemployment, the disqualification of the section no longer operates."

*See also Sprague & Henwood, Inc. v. Unemployment Compensation Board of Review*, 207 Pa. Super. 112, 215 A. 2d 269 (1965); *Texas Employment Commission v. Hodson*, 346 S.W. 2d 665 (Tex. Civ. App., 1961); *Knight-Morley Corp. v. Emp. Sec. Comm.*, 352 Mich. 331, 89 N.W. 2d 541 (1958).

On the other hand, however, whether replacements are permanent, thereby severing the employer-employee relationship and ending the labor dispute, depends upon the facts of the particular case. In *Special Products Company v. Jennings*, 209 Tenn. 316, 353 S.W. 2d 561 (1961), for example, the Tennessee court held that employees were entitled to benefits on the day they decided the strike was a lost cause and offered to return to work. In the *Sprague & Henwood* case, *supra*, the analysis was much more thorough:

> "In the instant case the employer severed the employment relationship by its letter to the claimants, with the same result to the relationship as if the employee had accomplished it by resignation. The letter, in so many words, advised the employee that he had been permanently replaced; his seniority was dissolved; the balance of his bond account was returned; the amount contributed to the retirement plan was returned; his life insurance and hospitalization were terminated; and he was instructed to remove all his personal belongings still on the plant property. From the time of this notice he was not only removed from actual labor because of the strike but the employment relationship was severed by the employer." 207 Pa. Super. at 117, 215 A. 2d at 272.

[2] In the present case, facts found by the Special Appeals Deputy and adopted by the Commission, were affirmed by the

Superior Court. Those findings reveal that a labor dispute arose between Employer and Employees on 27 February 1976. Furthermore, it was found that the dispute involved "wages, fringe benefits, and specifically the accounting methods for handling the profit sharing plan for the employees of the fabricating department. The dispute further involved the attempted transfer of one employee from the fabricating department to the construction department at a location in Macon, Georgia." On 1 March 1976, picket lines were formed. On that same day, Employer notified the striking Employees to return to work by 8:00 a.m. on Tuesday, 2 March 1976, and that Employer had no choice except to seek permanent replacements if Employees did not return to work. On or about 5 March 1976 Employees, according to the findings of fact adopted by the Superior Court, notified Employer of their "unconditional offer" to return to work. However, Employer by then had replaced fourteen of the sixteen striking Employees and did not have work available for the fourteen Employees.

Based on the record before this Court, it cannot be determined whether on 5 March 1976, when Employees offered unconditionally to return to work, the labor dispute was no longer "in active progress." The only evidence which might tend to show that the dispute was not over on 5 March was that on 2 March 1976 a petition for certification of the Upholsterer's International Union of North America as bargaining agent at Employer's premises was filed with the NLRB. While it was conceded upon oral argument of this appeal that Employees were members of this Union, there is no evidence, and no finding of fact, to indicate that the petition would prolong the employee-employer relationship between Employees and Employer, or that the petition was related in any way to the strike.

If the petition filed 2 March 1976 is found to be unrelated to the dispute which led to the strike, then it is concluded that Employees are entitled to benefits as of 6 March 1976. If it is not so found then Employees are not entitled to those benefits, and their disqualification would continue for so long as the petition was pending before the NLRB.

[3] The 9 March 1976 filing of the unfair labor practice charges does not alter this conclusion. Findings of fact adopted by the Superior Court indicate that the charges filed with the NLRB by Employees against Employer alleged "discrimination in regard to

the hire and tenure of employment in order to discourage membership in a labor organization." Such filing, therefore, is not related to the strike and cannot be the basis upon which to deny benefits to Employees.

As to the 9 March 1976 charges filed, Employees bolster their position by *Nash v. Florida Industrial Commission*, 389 U.S. 235, 19 L.Ed. 2d 438, 88 S.Ct. 362 (1967), in which the United States Supreme Court held that an employee entitled to and receiving unemployment compensation could not be denied those benefits simply because she filed an unfair labor practice charge before the NLRB. Hence, in the instant case, if Employees were entitled to unemployment compensation benefits as of 6 March 1976 they could not be deprived of such benefits because they exercised rights given them by the National Labor Relations Act.

In summary, the case is remanded to the Commission for findings of fact as to whether the 2 March 1976 election petition was related to the labor dispute which arose 27 February 1976, and for entry of an order consistent with the views expressed in this opinion.

Remanded.

Judges MORRIS and MARTIN concur.