SAMUEL S. AMICO, *ET AL.*, CLAIMANTS-APPELLANTS, v. BOARD OF REVIEW, DIVISION OF EMPLOYMENT SECURITY, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, AND GENERAL ELECTRIC COMPANY, RESPONDENTS.

Argued December 5, 1966—Decided March 27, 1967.

160

*Mr. George L. Pellettieri* argued the cause for claimants-appellants (*Messrs. Pellettieri and Rabstein,* attorneys; *Mr. Irving Abramson, Miss Ruth Weyand, Mr. Melvin Warshaw,* and *Miss Marilyn G. Rose,* of the District of Columbia bar, of counsel).

*Mr. Edward A. Kaplan* argued the cause for respondent, Board of Review, etc.

*Mr. Julius B. Poppinga* argued the cause for respondent, General Electric Company (*Mr. Merritt Lane, Jr.,* of counsel; *Mr. John R. Drosdick,* on the brief; *Messrs. McCarter and English,* attorneys).

The opinion of the court was delivered by

WEINTRAUB, C. J. This appeal involves some 150 claims for unemployment compensation. The Board of Review, one member dissenting, found the claims were barred by the labor-dispute disqualification provision in *N. J. S. A.* 43:21–5(d). In addition, the Board of Review considered whether, notwithstanding their ultimate defeat upon the merits before the Board, the employees should be paid under *N. J. S. A.* 43:21–6(b)(1) which calls for payment if there are two determinations of entitlement within the administrative agency. At first the Board thought there had been two such determinations and so stated, but upon rehearing the Board deleted that finding.[1]

The disappointed claimants appealed to the Appellate Division, which dismissed the appeals on motion because the employer was neither named in the notice of appeal nor served with it. We granted the claimants' petition for certification. 46 *N. J.* 313 (1966).

---

[1] The agency agrees that four employees were entitled to benefits on that basis and we understand they were paid.

I

The employer advances a number of procedural objections.

█ It says the notice of appeal should have named the appellants as required by R. R. 1:2–8(b). The notice reads that "Samuel Amico, *et als.*, Appellants" appeal from the whole of the final judgment of the Board of Review "in BR–L–1–E through BR–L–160–E." We think the appellants were thereby amply identified as all the claimants in the 160 matters bearing the docket numbers just quoted. No one could have understood anything less.

█ Next the employer says the employees cannot argue the two-determination issue because the decision of the Board of Review upon rehearing was silent upon the subject. We see no substance to this objection. A litigant cannot be denied appellate consideration of a critical claim merely because the final decision below was silent upon it. An appeal from a final judgment brings up every relevant issue urged before the agency or court, whether passed upon or not. If the issue was not resolved below, then, depending upon circumstances, the appellate court may itself decide it, or remand the matter to the tribunal below, or preserve the claim for a further proceeding.

The remaining procedural objection is the one which prevailed in the Appellate Division. Both the employer and the agency maintain that the appeal to the Appellate Division was properly dismissed because the employer was neither named in the notice of appeal nor served with it.

█ That the employer is a party in interest and must be made a party to the appeal is perfectly plain. See *New Jersey Zinc Co. v. Board of Review,* 25 N. J. 235, 239 (1957), and N. J. S. A. 43:21–6(b). The agency immediately called the omission to the attention of counsel for the employees. Nonetheless nothing was done before the expiration of the time for appeal, R. R. 1:3–1(b), or the further period in which the time for appeal could be enlarged under R. R. 1:27B(d). See *Alberti v. Civil Service Commission,* 41 N. J.

147, 152–54 (1963). Rather at a later date appellants merely served and filed an "amended" notice of appeal.

■ Obscure is the reason why appellants did not join the employer or act promptly when that failure was flagged. Their brief says the change in the Board's position upon the two-determination issue "shifted the focus of attention to a matter involving the Division and obscured the presence of the company." However, in his affidavit filed with us, counsel for appellants asserts he deliberately omitted the employer's name after consulting the rules of court. The affidavit does not reveal the process whereby that decision was reached.[2] Our rules dealing with review of a state agency expressly call for service of the notice of appeal, not only upon the agency and the Attorney General, but also upon "all other parties to the proceedings or their attorneys." *R. R.* 4:88–8(a).

■ Nonetheless we think appellants should be relieved of their failure. A copy of the notice of appeal was sent to counsel for the employer the day it was filed, and hence the employer was immediately aware of the appeal even though appellants did not intend thereby to "serve" the notice. The employer knew at once that the judgment of the Board of Review was challenged. Any doubt or ambiguity could have been dissipated by ordinary inquiry. Accordingly there was timely substantial compliance with the rule. The total circumstances come within *Alberti v. Civil Service Commission, supra,* 41 *N. J.* 147, where the appellant was relieved of a failure, as here, to join a party in interest to a state agency proceeding.

---

[2] At the oral argument counsel for appellants suggested our rules continued the practice under the superseded writ of *certiorari*. The rules do not, but beyond that, the practice upon *certiorari* always required that the parties to the proceeding be named in the writ or preferably in the endorsement upon the writ. *Hutchinson v. Rowan,* 57 *N. J. L.* 530, 532 (*Sup. Ct.* 1895) ; *Zeller v. Town of Guttenberg,* 81 *N. J. L.* 305, 306 (*Sup. Ct.* 1911) ; *Berry v. Recorder's Court of Town of West Orange,* 124 *N. J. L.* 385, 389 (*Sup. Ct.* 1940), affirmed o.b. 125 *N. J. L.* 273 (*E. & A.* 1940) ; *Tetro v. Public Service Electric & Gas Co.,* 135 *N. J. L.* 256, 258 (*Sup. Ct.* 1947).

## II

We thus reach the merits. The first question is whether the claimants were correctly held to be disqualified. The second is whether they should nonetheless prevail under the two-determination provision.

### A

*N. J. S. A.* 43 :21–5 provides in pertinent part :

"An individual shall be disqualified for benefits:

\* \* \* \* \* \* \*

(d) For any week with respect to which it is found that his unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed ; provided, that this subsection shall not apply if it is shown that :

(1) He is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work ; and

(2) He does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute ; provided, that if in any case in which (1) or (2) above applies separate branches of work which are commonly conducted as separate businesses in separate premises are conducted in separate departments of the same premises, each such department shall, for the purposes of this subsection, be deemed to be a separate factory, establishment, or other premises".

 It is agreed there was a work stoppage because of a labor dispute and that the unemployment of these claimants was due to that work stoppage. The question is whether the claimants brought themselves within the provisos (1) and (2). The employer contends the claimants did not satisfy either proviso. As to the first, the employer says that if the striking employees had succeeded in upgrading their work, all of these claimants would likely be benefited and thus all claimants were "directly interested in the dispute." The Board of Review rejected that proposition as too speculative and that finding is plainly correct. But the Board concluded the claimants did not satisfy the second proviso.

The Board held that although the claimants themselves had no interest in the dispute and did not participate in or finance it, yet they belonged to the "grade or class of workers" of which the individuals interested in the dispute were members.

The facts as found by the Board are these: The employer manufactures oil- and gas-fired warm air furnaces. The furnaces are made on two continuous assembly lines. The operation is closely integrated, each function depending immediately upon the completion of the prior one, so that if one stops, the entire operation is necessarily suspended. There were about 225 production workers and maintenance men in the plant, the maintenance men, who were highly skilled, actually functioning in the production process.

The several jobs were rated for pay purposes. The labor dispute involved 15 aircomatic welders who were classified in grade I–14 and who believed they should be lifted to I–19. The union, to which all the production and maintenance men except one or two belonged, and which was the bargaining agent for all of them, endorsed the claim of these welders, urging the upgrading was merited by the requirements and conditions of their work. The union pressed the welders' grievance through the stipulated steps of the collective bargaining contract. The disagreement not being resolved, the welders, as the parties agree, thereupon became free to strike without violating the contract.

The welders did strike. The assembly lines came to a halt, in consequence of which the claimants became unemployed. The Executive Board of the union formally "approved the legality of the action of the welders in compliance with the national contract." The minutes of a union meeting held on the day the welders failed to report for work recited the approval of the Executive Board and recorded the passage of a motion that "a vote of confidence be given the Executive Board's recommendations." Later, when the welders decided to picket, they obtained signs from the union office, upon which the welders wrote "Company un-

fair to welders." None of the claimants honored the picket line. Work resumed when the striking welders were replaced.

Although the Board found the union activities recited above, it grounded the result, not on the thesis that the claimants participated in the dispute directly or through the union, but rather on the thesis that the claimants and the striking welders constituted a single class because they worked on a "flow" or integrated assembly line and all were represented by the same union. Hence the Board found the claimants barred under (d) (2) because some of their grade or class, *i.e.*, the I–14 welders, were directly interested in the dispute.

The labor-dispute disqualification provision was a compromise between irreconcilable positions of labor and management. Labor contended that government would be partisan in a labor dispute if it withheld benefits with respect to the resulting work stoppage, while management insisted that neutrality required precisely that course. The legislative formula runs somewhere between the two, but the precise path is not revealed. The statute contemplates that one employee shall be paid and another shall not, even though both are equally uninterested in the labor dispute, but the statute is obscure as to the basis of this vicarious disqualification. Thus the second proviso, quoted above, turns the labor-dispute disqualification upon whether the employee belonged "to a grade or class" of workers any of whom is participating in or financing or directly interested in the dispute. But the statute does not say what is meant by "grade or class."

The meaning of "grade or class" depends upon the objective of the classification. The obscurity here reposes in the failure of the statute to state the basis or purpose of the compromise. It has been said that three thoughts were in mind although none was articulated: (1) to prevent "key man" strikes, wildcat or not, whereby a few could achieve a wide shutdown with a minimum loss of benefits

overall; (2) to protect the union from the defection of its members which might ensue if benefits depended upon participation, support, or interest in the dispute; and (3) to avoid the administrative burden of passing upon the circumstances of each and every employee. *Queener v. Magnet Mills,* 179 *Tenn.* 416, 167 *S. W. 2d,* 1, 4 *(Sup. Ct.* 1942); *Cameron v. De Board,* 230 *Ore.* 411, 370 *P. 2d* 709, 713 *(Sup. Ct.* 1962); Lesser, "Labor Disputes and Unemployment Compensation," 55 *Yale L. J.* 167, 169 (1945).

None of these supposed objectives would shed much light upon the meaning of "class." The first, the "key man" concept, tells us only that the disqualification may go beyond the interested participants, but does not locate the line which separates two workers who were both unemployed because of a dispute which did not concern them. As to the protection of the union, that thesis would call for a disqualification of all members and arguably all the union would like to recruit. If labor ever sought that result, surely it has changed its mind, for we see no evidence that labor is at all happy with the disqualification. And the third supposed factor in the compromise — administrative convenience — gives no clue to the dimensions of the "class."

Our own cases understandably are not too revealing. In *Ford Motor Co. v. New Jersey Dept. of Labor and Industry,* 5 *N. J.* 494 (1950), we held that benefits should be paid to workers at an assembly plant who became unemployed because of a work stoppage induced by a labor dispute at another plant upon which the assembly plant was wholly dependent. Subsection (d) speaks of "a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed," and this was read to limit the disqualification, at the outside, to those employed at the place where the labor dispute itself is situated, notwithstanding a functional integration with the work done at separate establishments. Thus we declined to expand the disqualification beyond its literal phrasing. But our cases are not too helpful in

identifying the "class" within "the factory, establishment or other premises" at which a claimant is or was last employed, and that is the situation before us.

In *Kieckhefer Container Co. v. Unemployment Compensation Comm'n*, 125 *N. J. L.* 52 (*Sup. Ct.* 1940), and 125 *N. J. L.* 55 (*Sup. Ct.* 1940), involving a strike by production workers, it was held that a worker, described as a handy man or a utility man, was not disqualified. The class was deemed to include only those who participated in the creation of the product.

In *Gerber v. Board of Review*, 20 *N. J.* 561 (1956), the employer and the union being unable to agree upon a new contract, a strike ensued. The union represented production and maintenance men and watchmen. The watchmen continued to work in accordance with a contractual obligation to do so, but they were later replaced by supervisory employees. The watchmen were denied benefits. In fact they were directly interested in the labor dispute in that the terms and conditions of their employment were involved in the contractual disagreement within the meaning of the first proviso of the statute. In denying benefits the Court did not, however, stop with a finding that the watchmen were directly interested in the dispute, but rather added, perhaps as *dictum*, that the watchmen were in the same "grade or class" with the production and maintenance men because all were represented by the same union.[3]

---

[3] The Court said, 20 *N. J.*, at *p.* 568:

"* * * Where, as here, a single union represents all the employees and these employees voluntarily make the union their bargaining agent, such agreement for the purposes of this statute excludes a division of classes smaller than the category covered by the contract. The one union represented them as to the terms and conditions of their employment and the labor dispute was the result of a disagreement over such terms and conditions of employment, and there is nothing in the statute that indicates that it was intended to exclude some members of the union simply because the contract dealt with their employment on a different basis as to rates of pay, hours or working conditions. The statute clearly indicates that all employees who benefit by the terms and conditions of a union contract are directly in-

In the case before us, the Board of Review found all of the claimants and the striking I–14 welders were members of a single class because (1) all were engaged in production on an integrated assembly line within a physically distinct establishment, and (2) all were represented by the same union as bargaining agent. The Board of Review thus adopted the view, widely held, that in such circumstances the employees are ordinarily within a single class. *Brown Shoe Co. v. Gordon,* 405 *Ill.* 384, 91 *N. E.* 2d 381 (*Sup. Ct.* 1950); *Adams v. Review Board,* 121 *Ind. App.* 273, 98 *N. E.* 2d 681 (*App. Ct.* 1951); *Bethlehem Steel Co. v. Board of Appeals,* 219 *Md.* 146, 148 *A.* 2d 403 (*Ct. App.* 1959); *United States Steel Corp. v. Unemployment Compensation Board of Review,* 189 *Pa. Super.* 362, 150 *A.* 2d 361 (*Super. Ct.* 1959); *Bethlehem Steel Co. v. Unemployment Compensation Board of Review,* 191 *Pa. Super.* 434, 156 *A.* 2d 576 (*Super. Ct.* 1959), affirmed by evenly divided court, 402 *Pa.* 202, 166 *A.* 2d 871 (*Sup. Ct.* 1961); *Cameron v. De Board, supra,* 230 *Or.* 411, 370 *P.* 2d 709; *Johnson v. Pratt,* 200 *S. C.* 315, 20 *S. E.* 2d 865 (*Sup. Ct.* 1942); *Anderson v. Aluminum Co. of America,* 193 *Tenn.* 106, 241 *S. W.* 2d 932 (*Sup. Ct.* 1951); *cf. Bartlett v. Administrator, Unemployment Comp. Act,* 142 *Conn.* 497, 115 *A.* 2d 671 (*Sup. Ct. Err.* 1955); *Unemployment Compensation Comm'n v. Martin,* 228 *N. C.* 277, 45 *S. E.* 2d 385 (*Sup. Ct.* 1947); *Queener v. Magnet Mills, supra,* 179 *Tenn.* 416, 167 *S. W.* 2d 1.

We cannot say the concept applied by the Board of Review departs from the Legislature's intent. Indeed appellants seem not to quarrel with the validity of that general thesis. Nor do they contend that any of them are outside the class because of the duties or conditions of their work. Rather appellants question the application of the Board's

terested therein and must be considered in the same grade or class for the purposes of the statute, and this is so whether they participated in or are financing the labor dispute which resulted in a work stoppage."

concept to this case solely because of a contractual situation they say is unique. They argue that under the contract the welders were entitled to strike when their grievance was not settled through the grievance procedure; that accordingly the union could not control the welders; and hence the strike by the welders "had the effect of splitting the bargaining unit in two, *i. e.,* employees acting under the collective auspices of the union as against employees exercising their individual and independent right to strike." No case under a statute phrased as ours supports the line the claimants seek to draw.

The difficulties with claimants' position are several. First, the contract did not take the welders outside the bargaining unit. The most that can be said is that the welders did not violate the contract by refusing to work. The welders remained in the bargaining unit and the union continued to be their representative. Indeed the welders made no effort themselves to deal with the employer. Second, the claimants' position smacks of the notion that the right-or-wrong of a labor dispute or strike is material. It is not; the labor-dispute disqualification provision does not contemplate an inquiry into the merits of the dispute. Third, reduced to its essentials, claimants' position really is that they had no interest in the dispute between the welders and the employer. The statute, however, does not limit the "class" to those who are interested in the labor dispute. On the contrary it expressly bars all members of a class if any of its members are directly interested in the dispute (or participate in or finance it). Further the argument assumes the parties to a contract could control the operation of the statute by agreeing that the "class" shall be only those employees who are directly interested in a dispute. The parties could not expand or restrain the reach of the statute by a stipulation of that kind. See *Soricelli v. Board of Review,* 46 *N. J. Super.* 299, 310 (*App. Div.* 1957). Finally, the statute speaks of membership in a class as the class existed "immediately before the commencement of the stoppage,"

and at that point the I–14 welders were members of the class even upon the claimants'. view that the act of striking somehow split the bargaining unit and thereby the class.

 For these reasons we cannot say the decision of the Board of Review was erroneous.

### B

The final question is whether the appellants are nonetheless entitled to benefits under the following portion of *N. J. S. A.* 43:21–6(b)(1):

"* * * If an appeal is duly filed, benefits with respect to the period covered by the appeal shall be payable only after a determination of entitlement by the appellate tribunal; benefits payable for periods pending an appeal and not in dispute shall be paid as such benefits accrue; provided, that insofar as any such appeal is or may be an appeal from a determination to the effect that the claimant is disqualified under the provisions of section 43:21–5 of the Revised Statutes or any amendments thereof or supplements thereto, benefits pending determination of the appeal shall be withheld only for the period of disqualification as provided for in said section, and notwithstanding such appeal the benefits otherwise provided by this act shall be paid for the period subsequent to such period of disqualification. *and provided, also, that if there are 2 determinations of entitlement, benefits for the period covered by such determinations shall be paid regardless of any appeal which may thereafter be taken,* but no employer's account shall be charged with benefits so paid if the decision is finally reversed." (Italics ours)

As mentioned earlier, the Board of Review at first said the claimants were entitled to be paid under this provision but in its amended decision deleted that finding. The finding was deleted because in fact there had not been two such determinations.

 To obtain benefits an employee must (1) be eligible and (2) not be disqualified. *Krauss v. A. & M. Karagheusian, Inc.,* 13 *N. J.* 447, 454–455 (1953). *N. J. S. A.* 43:21–4 deals with eligibility and *N. J. S. A.* 43:21–5 deals with disqualification. Here there was a determination by the Deputy of eligibility as to all claimants, subject to reporting. However, only five appeals were directly involved in the trial

before the Appeal Tribunal, and the record before that tribunal is perfectly clear that as to all other appellants the matter of eligibility would remain open for determination thereafter, subject to further appeal in each individual matter. Eligibility was in issue before the Appeal Tribunal only with respect to the five appellants whose cases were tried on appeal, and in fact one of them was denied benefits because he was found ineligible. The other four, who were found entitled, *i. e.,* both eligible and not disqualified, were paid on the basis of the two-determination provision, but as to the claimants whose eligibility was never adjudged in the Appeal Tribunal, the Board of Review correctly found that in fact there had not been two determinations.

Appellants say that in matters of mass unemployment, especially those involving the issue of labor-dispute disqualification, it will be difficult to process all claims simultaneously, thus to obtain for all the possible benefit of the two-determination rule. This may be true, but if there is a shortcoming, it inheres in the statutory scheme, and we cannot amend it.

The two-determination rule being inapplicable in fact, we need not consider the employer's further contentions with respect to the construction and validity of the provision.

The order of the Appellate Division dismissing the appeals is set aside and the amended decision of the Board of Review is affirmed on the merits. No costs.

*For reversal of judgment of Appellate Division and affirmance of decision of Board of Review*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.