106 N.J. Super. 420 (1969)
256 A.2d 71
PATRICK H. HALEY, ET AL., PLAINTIFFS-APPELLANTS,
v.
BOARD OF REVIEW, DIVISION OF EMPLOYMENT SECURITY, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, AND ARMSTRONG CORK CO., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 19, 1969.
Decided July 24, 1969.
*422 Before Judges GOLDMANN, KOLOVSKY and CARTON.
Mr. Vincent J. Pancari argued the cause for appellants (Messrs. Halpin and Bailey, attorneys).
Mr. Edward A. Kaplan argued the cause for respondents.
The opinion of the court was delivered by CARTON, J.A.D.
Claimants appeal from a decision of the Board of Review holding them disqualified for unemployment benefits because of a labor dispute due to a work stoppage at the Armstrong Cork Company plant at Millville.
Pertinent portions of the "labor dispute" disqualification provisions of the Unemployment Compensation Act (N.J.S.A. 43:21-5) provide:
"An individual shall be disqualified for benefits:

* * * * * * * *
(d) If it is found that his unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment or other premises at which he is or was last employed. No disqualification under this subsection shall apply if it is shown that:
(1) He is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work; and
(2) He does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute * * *."
The Board of Review, as had the Appeals Tribunal, held that although claimants had satisfied the conditions of subparagraph (1), they had not done so as to subparagraph (2). The Board found that claimants neither participated in the *423 labor dispute which caused the work stoppage, nor financed it, nor were directly interested in it. Nevertheless, it concluded that since claimants were employees of a plant "with a continuous and coordinate manufacturing process" in which "each function is dependent upon the completion of the preceding one," they belonged to the same grade or class as the striking employees and were therefore likewise barred from receiving unemployment compensation.
The issue posed is whether that determination justifies the invocation of the statutory disqualification.
There is no dispute as to the facts. Armstrong's Millville plant is what is commonly referred to as a "flow glass container plant," where food and beverage glass containers are manufactured. The plant operates on a 3-shift, 24-hour, 7-day basis. The manufacturing process is a "continuous" one, with each function being dependent upon the completion of the preceding one. When one part of the manufacturing process is stopped the entire operation must necessarily be suspended.
On February 1, 1968 there were employed at the plant about 1235 employees working on an hourly basis. Of these some 95 were mold makers and machinists, members of Locals 7 and 97, American Flint Glass Workers Union (AFGWU). The 80 claimants were members of these locals. Some 900 employees were production and maintenance workers, members of Local 257 of the Glass Bottle Blowers Association (GBBA), and 100 were warehousemen, shippers and yard truck drivers, who were members of Teamsters Local 676.
The mold makers make new molds for the forming department. These molds are used in the automatic bottle machines to make various shapes and forms of bottles, depending upon the type of mold. The mold makers also make repairs to molds in the machines. The jobs of making new molds and repairs are intermingled according to which of the mold makers are available at the time. There is no differentiation as to who works on new work and who works on repairs.
*424 The machinists, members of local 97 AFGWU, maintain all machines that produce the bottles, and also the feeders that feed the glass. The machines run 24 hours a day and require constant maintenance and repair work because of constant breaking of parts, all being air operated.
Claimants became unemployed on February 1, 1968 when the Armstrong plant was forced to close down due to a strike of the production and maintenance workers, members of Local 257 GBBA. The strike was part of an industry-wide strike by members of the production and maintenance workers unions initially affecting some 64 glass container plants operated by 22 glass manufacturing companies east of the Rocky Mountains.
The plant remained closed until March 23, 1968. During the strike the nonstriking claimants attempted to cross the picket lines but were prevented from doing so. Their union shop committee made unsuccessful efforts to negotiate an agreement with the production and maintenance union officers to get through the picket lines. They also endeavored to induce the employer to make a separate plant agreement with the striking union (GBBA) rather than to continue to negotiate on a multi-employer, multi-union basis.
The narrow question presented is whether claimants belonged to a "grade or class" of workers, any of whom participated in, financed or was directly interested in the labor dispute. As already noted, the Board predicated its determination that they fell into the same category as the striking production and maintenance union employees solely for the reason that they were employed in a "continuous flow plant."
We do not agree that the statutory term "grade or class of workers" may properly be defined solely in relation to the continuity of the manufacturing process in which the workers are engaged or gauged solely by the similarity of their duties to others employed in that process. The statute does not in terms mandate, and we perceive nothing in it which suggests, a legislative intention to deny such non-striking *425 workers the benefits which the statute confers simply because of the adventitious circumstance that they were employed in a "continuous flow" manufacturing process. The disqualification should not be expanded beyond its literal phrasing. See Amico v. Board of Review, 49 N.J. 159, 168 (1967).
As Chief Justice Weintraub observed in Amico (at page 167), the statute "is obscure as to the basis of this vicarious disqualification" and the proviso in question "turns the labor-dispute disqualification upon whether the employee belongs `to a grade or class' of workers any of whom is participating in or financing or directly interested in the dispute. But the statute does not say what is meant by `grade or class.'"
The word "grade" has been interpreted to refer generally to the type of work being performed, skills or expertness, or to such skills in relative position, rank or standing to those of other employees engaged in common employment. See Members of Iron Workers Union of Provo v. Industrial Commission, 104 Utah 242, 139 P.2d 208 (1943). Employees have been said to come within a "grade or class" when they individually and collectively engage themselves formally or informally for a common purpose to obtain by concerted action a common objective. See Copen v. Hix, 130 W. Va. 343, 43 S.E.2d 382 (1947). And see annotation relating to unemployment benefits due to labor disputes, 28 A.L.R.2d 287, 340-343 (1953), which collects the cases where these and similar phrases have been interpreted.
But we deem it unnecessary to define the precise meaning of the words "grade or class" apart from or without regard to the statute in which they appear. There is language in the statute which sheds light on their intended meaning.
We are of the view that the phrase "grade or class" may not be considered in isolation, but must be read together with the language which immediately follows it in order to arrive at a correct interpretation of its intent and purpose. That language modifies the words "grade or *426 class" and qualifies and affects their scope and content to accord with the general purpose of the disqualification provisions of the statute.
The general theory of the disqualification provisions would appear to be to withhold rewarding those whose activities assist in bringing about their own unemployment or who benefit from such activities. See Soricelli v. Board of Review, 46 N.J. Super. 299 (App. Div. 1957). The aim of the specific proviso under consideration seems designed to implement that policy by denying benefits to the members of any group which as a group might be said to join in, promote or obtain some advantage through the interdicted activities of any of its members.
There are many groups to which a worker may belong which have no necessary connection with the activities enjoined by the statute. To hold such a worker is automatically deprived of benefits by reason of his membership in that group would be to penalize non-striking workers on a broad, vicarious basis which would further no discernible legislative purpose. Indeed, to apply such an automatic disqualification might well encourage workers to participate actively in labor disputes to which they might otherwise have assumed a merely passive role.
Only when a worker's own interest is advanced by reason of membership in a group, one or more of whom engages in the activities of the nature described in the statute, should he be deprived of unemployment benefits. A number of classifications of this kind can be envisioned as possibly entailing a disqualification on this basis. Membership in a union may provide a basis for extending disqualification to all its members because some of them belong to the same "grade or class" as the strikers. Other examples appear in the cases referred to in the annotation in 28 A.L.R.2d, at 287 et seq.
Thus, it is necessary to look to the nature and character of the group involved to ascertain whether the objectionable activities of any members require the taint of *427 vicarious disqualification to be extended to its entire membership. We detect nothing in the nature or character of claimants' common employment with the 900 production and maintenance workers in the "continuous manufacturing process" or in the "continuous flow" plant operation at the Armstrong plant which requires that such disqualification be invoked against them.
The authorities relied upon by the Board in support of its ruling are consistent with this conclusion. In Amico the claimants worked within an integrated continuous flow production line and were members of the same union as the 15 welders who struck their common employer and caused a work stoppage. Since the claimants refused to participate in the strike or honor picket lines, the court found that the requirements of N.J.S.A. 43:21-5(d)(1) had been satisfied and proceeded to determine whether they should be considered members of the same "grade or class" under N.J.S.A. 43:21-5(d)(2). The court decided that despite claimants' refusal to participate in the strike they were not entitled to receive compensation because all members of a class are denied recovery if any of them advances the labor dispute. Being members of the same collective bargaining unit as the strikers, they were members of the "same class" as those who were responsible for the strike.
In Gerber v. Board of Review, 20 N.J. 561 (1956), six watchmen sought compensation benefits for unemployment resulting from a strike called by their own union, which was bargaining in their behalf because they had ratified their union's action by striking. The court denied recovery because the union was their collective bargaining agent, thereby making them directly interested in the outcome of the labor dispute. Likewise, in Basso v. News Syndicate Co., 90 N.J. Super. 150 (App. Div. 1966), the court denied recovery because claimants were members of a guild which aided and promoted the strike of their fellow employees' printers union, including honoring their picket lines and adopting that union's directives to its rank-and-file printers.
*428 In Burgoon v. Board of Review, 100 N.J. Super. 569 (App. Div 1967), the court was concerned with a continuous flow production situation at the same Armstrong plant here involved. In that case a teamster union walk-out occurred and was supported by Local 257 of GBBA but not by Local 7 of that union. Nevertheless, the court ruled that GBBA Local 7 members were ineligible for compensation because they were members of the same class as GBBA Local 257 since both were represented by the same international union, paid membership dues to it, maintained a common strike fund with the international, and were beneficiaries of its accomplishments.
In all these cases unemployment compensation was denied because claimants either directly participated in the work stoppage or were members of the same class as those causing the strike. However, as the Board found, the claimants here did nothing to advance the GBBA strike and, indeed, attempted to terminate it. Moreover, they had no union affiliations with the GBBA and consequently were not members of that "grade or class." No common objectives or tangible joint benefits existed.
Reversed.